# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1999-CA-00686-COA

**STEPHANIE TILLMAN, A MINOR, BY AND THROUGH HER LEGAL GUARDIAN, THERESA MIGUES**　　　　　　　　　　　**APPELLANT**

**v.**

**DAVID SINGLETARY AND STACY POWE**　　　　　　　　　　**APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/1998 |
| TRIAL JUDGE: | HON. JERRY O. TERRY SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT H. TYLER |
| | MICHAEL E. BRUFFEY |
| ATTORNEYS FOR APPELLEE: | TINA ROSE SINGLETARY |
| | BRITT R. SINGLETARY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | DIRECTED VERDICT AND JURY VERDICT FOR DEFENDANTS |
| DISPOSITION: | REVERSED AND REMANDED AS TO POWE AND AFFIRMED AS TO SINGLETARY-3/20/01 |
| MOTION FOR REHEARING FILED: | 3/30/2001; denied 6/19/2001 |
| CERTIORARI FILED: | 7/18/2001; granted 10/11/2001 |
| MANDATE ISSUED: | |

BEFORE KING, P.J., MYERS, AND THOMAS, JJ.

KING, P.J., FOR THE COURT:

¶1. Theresa Migues, on behalf of her minor daughter, Stephanie Tillman, sued David Singletary and Stacey Powe in the Harrison County Circuit Court. While swimming in the Tchoutacabouffa River, Tillman sustained injuries when a powerboat driven by Powe and owned by Singletary struck her. During the trial, the judge granted Singletary a directed verdict on the issues of negligent entrustment and punitive damages. The jury returned verdicts for Singletary and Powe on the remaining issues. Tillman then filed appropriate post trial motions, which were denied. Aggrieved by this decision, Tillman appeals and raises the following issues: 1) did the trial court commit reversible error by granting the defendants' jury instructions on unexpected and unavoidable accidents; 2) did the trial court commit reversible error by failing to grant the appellant's requested instruction P-5; 3) was defendant David Singletary entitled to a Rule 50 directed verdict on the issues of negligent entrustment and punitive damages; 4) did the trial court commit reversible error in submitting a special interrogatory to the jury that was misleading and confusing and failed to allow that both defendants were operators of the vessel that injured the appellant; and 5) was the verdict against

the overwhelming weight of the evidence?

¶2. This Court affirms this decision as it relates to Singletary and reverses and remands for a new trial as it relates to Powe.

## FACTS

¶3. On Saturday evening, in the summer of 1995, Stephanie Tillman was swimming in the Tchoutacabouffa River. A large number of persons were also enjoying activities in and around the river at that time. Among those persons were Powe and Singletary, who were traveling in a speed boat owned by Singletary. While riding on the crowded river, Powe and Singletary observed a boat in front of them carrying tubers. Powe slowed the boat to about ten knots and stood up to get a better view of the tubers and nearby swimmers. While Powe was standing, a passing ski boat caused a series of waves to wash past the boat. These waves rocked the speed boat during which time Powe's knee buckled. Powe had suffered reoccurring knee problems since 1989, with the latest having occurred eight months prior to this accident.

¶4. Powe lost control of the boat and fell between the passenger and driver seats. The boat then began to spin toward a dock. Singletary took control of the boat and killed the engine. Despite Singletary's efforts, the boat continued to spin, crashed into the dock and struck Tillman. Powe jumped from the boat and pulled Tillman to safety.

¶5. Police and emergency crews arrived and transported Tillman to the hospital. Tillman received extensive injuries to her left upper arm. As a result of these injuries, Tillman had to undergo plastic surgery and psychological counseling. The police conducted an investigation, which included an interview with Singletary and Powe at the scene. During the interview Powe acknowledged having consumed one beer approximately four hours before the incident and Singletary said that he had consumed three beers. Testing revealed that Powe's blood alcohol content did not exceed the statutory limit. Likewise, there was no indication of alcohol impairment of Singletary.

## ISSUES AND ANALYSIS

### I.

**Did the trial court commit reversible error by granting the defendants' jury instructions on unexpected and unavoidable accidents?**

¶6. Tillman contends that the jury instructions on unexpected and unavoidable accidents were improper considering the facts of the case. Relying on *Buford v. Riverboat Corporation of Mississippi,* 756 So. 2d 765 (Miss. 2000), Tillman argues that this is not that rare occasion where Singletary and Powe could not have foreseen this incident or prevented it from happening by exercising precaution.

¶7. An unavoidable accident is an occurrence that is not intended, but could not have been foreseen or prevented by the exercise of reasonable precaution under the circumstances. *Buford v. Riverboat Coporation of Mississippi,* 756 So. 2d 765 (¶ 29) (Miss. 2000). Whether an accident is unavoidable must be determined on a case by case basis. Likewise, whether an unavoidable accident instruction is proper depends on the facts and circumstances of the particular case. *Id*.

¶8. An unavoidable accident instruction should only be granted in "situations where the accident may truly

be said to be unavoidable." *Buford*, 756 So. 2d at 771 (citing *Hollingsworth v. Thomas*, 250 S.E. 2d 791 (Ga. App. 1978)). As noted, our supreme court has held that this instruction should very rarely be granted. This does not appear to be one of those rare circumstances where an unavoidable accident instruction should be given. *See Pope v. Sanders*, 217 So. 2d 1, 3 (Miss. 1968); *Jones v. Richards*, 181 So. 2d 923, 925 (Miss. 1966). In this case, Powe was aware of his history of reoccurring knee problems, but chose to operate the power boat on a crowded river while standing. Granting the instruction based on Powe's knee buckling was not enough to establish that the accident as unavoidable.

## II.

### Did the trial court commit reversible error by failing to grant the appellant's requested instruction P-5?

¶9. Instruction P-5 would have directed the jury to return a verdict for Migues should it find that the boat, while operated by Powe, was still under the direction and control of Singletary and that Singletary's negligent supervision of Powe caused the accident. Accordingly, this Court affirms the verdict as to Singletary and thereby renders moot this issue.

## III.

### Was Defendant David Singletary entitled to a Rule 50 directed verdict on the issues of negligent entrustment and punitive damages?

¶10. Tillman argues that the trial judge erroneously granted Singletary's motion for directed verdict on negligent entrustment and punitive damages. Tillman asserts that negligent entrustment should apply to this case because Singletary negligently allowed Powe, who was inexperienced in the operation of the boat, to steer and operate the boat. Additionally, Tillman argues that punitive damages should have been considered by the jury based on evidence that Singletary was intoxicated while operating the boat.

¶11. In making a decision to grant or deny a directed verdict, the trial court must consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence, as well as contemplating any uncontradicted evidence presented by the moving party. *Pickering v. Industria Masina I Traktora*, 740 So. 2d 836 (¶ 23) (Miss. 1999); *American Fire Protection, Inc. v. Lewis,* 653 So. 2d 1387, 1390 (Miss. 1995). If the facts thus considered point so overwhelmingly in favor of the movant that reasonable men could not have rendered a different result, the directed verdict should have been granted. *Pickering*, 740 So. 2d at 836 (¶ 23). This Court applies that same standard upon review of a directed verdict.

¶12. Applying this standard to the case at bar, we find that there is substantial evidence in the record to support the directed verdict and the evidence is of such quality and weight that affirmance of the verdict is required. In order for a negligent entrustment claim to lie, the defendant must (1)supply the chattel, (2) know or have reason to know the person he supplies it to, because of his youth, inexperience or otherwise, will use it in a manner involving unreasonable risk of physical harm, and (3) have reason to expect that others may be endangered by the entrustee of the chattel. *Sligh v. First National Bank of Holmes County*, 735 So. 2d 963 (¶ 62) (Miss. 1999). Singletary allowed Powe to operate the power boat. There was evidence introduced that established Powe had prior boating experience of which Singletary was aware. Tillman did not produce evidence to call into question that experience or accountability.

Accordingly, we cannot hold that the trial court erred by denying the directed verdict on negligent entrustment. We next review Tillman's claim that the matter of punitive damages should have been submitted to the jury.

¶13. In order for a trial court to award punitive damages, the plaintiff must demonstrate a willful or malicious wrong or reckless disregard for the rights of others. *Willard v. Paracelsus Health Care Group*, 754 So. 2d 437 (¶ 20) (Miss. 1999) (citing *Valley Forge Ins. Co. v. Strickland*, 620 So. 2d 535, 540 (Miss.1993)). "Punitive damages are only appropriate in the most egregious cases so as to discourage similar conduct and should only be awarded in cases where the actions are extreme." *Willard*, 754 So. 2d at 442 (¶ 20).

¶14. When punitive damages is an issue, the trial judge initially determines whether to submit the issue to the jury. *Epps v. South Central Bell*, 509 So. 2d 886, 892-93 (Miss. 1987). The trial judge is required to review all the evidence presented and determine whether the facts of the case and the conduct of the defendant justifies a jury consideration of punitive damages. *Id*. (quoting *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 842 (Miss. 1984). In this case, Singletary testified that he consumed three beers approximately four hours before the accident. Both Powe and Singletary testified that Powe was operating the boat prior to the accident. In addition to that, Officer Polk testified that he did not smell alcohol or notice any visible signs of intoxication. Officer Polk even allowed Singletary to drive the boat back to his home. There was no evidence to indicate that Singletary was intoxicated at the time of the accident. The trial judge considered the facts of this particular case, and determined that they did not justify submitting an issue of punitive damages to a jury. This Court agrees.

¶15. Because we reverse and remand we find it unnecessary to address the remaining issues.

¶16. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS REVERSED AND REMANDED AS TO POWE AND AFFIRMED AS TO SINGLETARY. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

 **PAYNE, BRIDGES, THOMAS, LEE, IRVING, AND MYERS JJ., CONCUR. McMILLIN, C.J.,DISSENTS WITH SEPARATE OPINION JOINED BY SOUTHWICK, P.J. CHANDLER, J., NOT PARTICIPATING.**

 McMILLIN, C.J., DISSENTING:

¶17. I respectfully dissent as to the majority's decision to reverse the jury verdict in Powe's favor because the jury was instructed on the principle of unavoidable accident. The unavoidable accident instruction was properly given, since it was both a correct statement of the law and was supported by evidence in the record. *See Turner v. Turner*, 602 So. 2d 817, 823 (Miss. 1992). Powe's theory was that a sudden and unforeseeable collapse of his knee caused him to fall and lose control of the boat and that this was the proximate cause of the accident, as opposed to the various theories of negligence advanced by the plaintiff.

¶18. The majority finds the instruction improper, not because it incorrectly recites the applicable law, but because "Powe was aware of his history of reoccurring knee problems, but chose to operate the power boat on a crowded river while standing." With respect to my colleagues in the majority, the question of whether, based on his prior medical history, Powe should have anticipated and taken greater precaution against a sudden physical collapse of his knee was a question of fact to be resolved by the jury. The

instruction fully accommodated that proposition, since it required the jury to find *as a matter of fact* that the collapse was "unexpected and unforeseeable" before it could apply the concept of unavoidable accident. There was substantial evidence presented concerning the condition of Powe's knee, but there was no evidence that he had ever before experienced a sudden collapse of the nature he described to the jury. On the evidence in this record, a finding of fact that Powe had no good reason to think that his knee would unexpectedly buckle and cast him away from the boat's controls was entirely within the realm of the jury's discretion. I can see no difference between this case and one where a person driving a vehicle suddenly faints or is subjected to a disabling seizure and loses control of his vehicle, resulting in an accident. In such circumstance, a sudden, unanticipated, and unavoidable event is the proximate cause of the accident and thus does not give rise to a claim for negligence.

¶19.  The instruction properly recited the applicable law and conditioned a result favorable to Powe on the jury's resolving the critical disputed issues of fact in his favor. That is apparently what the jury did. Whether that verdict was against the weight of the evidence is another matter, but that question cannot be resolved by considering the manner in which this jury was instructed. It was not error to submit Powe's theory of the case to the jury through an unavoidable accident instruction.

**SOUTHWICK, P.J., JOINS THIS SEPARATE WRITTEN OPINION.**